UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
KINGVISION PAY-PER-VIEW LTD., as Broadcast
Licensee of the May 14, 2005 WRIGHT/TRINIDAD
Program,

                              Plaintiff,

                -against-

MANUEL PALAGUACHI, Individually and as officer,
director, shareholder and/or principal of EL PICCOLINO
RESTAURANTE CORP. d/b/a EL PICCOLINO
RESTAURANTE a/k/a EL PICCOLINO REST. a/k/a
IL RISTAURANTE, INC. a/k/a EL PICCOLINO
RESTAURANTE, and EL PICCOLINO RESTAURANTE
CORP. d/b/a EL PICCOLINO RESTAURANTE a/k/a
EL PICCOLINO REST. a/k/a IL RISTAURANTE, INC.
a/k/a EL PICCOLINO RESTAURANTE,

                           Defendants.
-------------------------------------------------------------------------X

<u>REPORT AND
RECOMMENDATION</u>

06-CV-2509 (FB) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiff, Kingvision Pay-Per-View, Ltd. ("plaintiff" or "Kingvision"), brings this action against defendants Manuel Palaguachi, individually and as an officer of El Piccolino Restaurante Corp., and El Piccolino Restaurant (collectively, "defendants" or "El Piccolino"), alleging that they violated the Federal Communications Act of 1934, codified as amended at 47 U.S.C. §§ 553 and 605. Compl. ¶¶ 21, 28, 35. More specifically, plaintiff alleges that defendants engaged in the unlawful interception and exhibition of the Wright/Trinidad pay-per-view boxing event (the "Event") on May 14, 2005. *Id.* ¶¶ 18, 19.

       Plaintiff filed the complaint on May 22, 2006. Docket Entry 1. Defendants were served on June 12, 2006. Docket Entries 2-3. Defendants failed to appear or otherwise move with

respect to the complaint. Plaintiff then moved for a default judgment on August 9, 2006, seeking statutory and enhanced damages, as well as attorney's fees and costs. Docket Entry 6.

Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, on August 9, 2006, the Clerk of the Court noted defendants' default pursuant to Fed. R. Civ. P. 55(a). Docket Entry 8. On September 20, 2006, the Honorable Frederic Block granted plaintiff's application for a default judgment and referred this case to me for a damages inquest, and to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Docket Entry 10. Plaintiff has submitted, *inter alia,* a memorandum of law ("Pl. Memo") and the affidavits of its counsel, Julie Cohen Lonstein, dated August 8, 2006 ("Lonstein Aff."), and its Vice-President, Donna K. Westrich, dated July 20, 2006 ("Pl. Aff."), in support of its application for damages. Docket Entry 6.

## Facts

Plaintiff was granted the rights to distribute the Event, including all undercard bouts, and the entire television broadcast via closed circuit television and encrypted satellite signal. Compl. ¶ 15. Plaintiff entered into agreements with various entities in the State of New York allowing them to publicly exhibit the Event to their patrons. *Id.* ¶ 16. Defendants did not contract with Kingvision for the rights to exhibit the Event. Pl. Aff. ¶ 6.

The satellite signal that transmitted the Event was encrypted to protect its access from those who did not contract with plaintiff to lawfully broadcast the Event. Defendants would not have the ability to receive the signal without, *inter alia*: 1) the use of a "black box" which is purchased for a fee and when installed on a cable TV line will descramble reception of pay-per-view broadcasts; 2) misrepresenting the commercial nature of their establishment to the cable

company in order to purchase the broadcast at the residential price of $54.95; or 3) the use of an illegal cable drop or splice from an adjacent apartment or home that had already purchased the broadcast at the residential price. Pl. Aff. ¶ 10.

Plaintiff hired an independent investigator to identify establishments that were unlawfully exhibiting the event. Pl. Aff. ¶ 4. On May 14, 2005, defendants intercepted and received the signal for the Event without authorization. *Id.* ¶ 7, Compl. ¶ 18. Defendants then broadcast the Event to the patrons within El Piccolino Restaurante located at 511 40th Street, Brooklyn, New York 11232. *Id.*

The auditor who visited El Piccolino Restaurante on the night of the Event, Thomas Larkin, submitted an affidavit dated May 23, 2005 ("Piracy Aff."), in which he states that he entered the restaurant at approximately 11:21 p.m. and observed the exhibition of the second round of the main event. Piracy Aff. at 1. According to the auditor, there were three television sets displaying the Event, and there were approximately 15 patrons in the restaurant. *Id.* at 2.

## Discussion

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan,* 807 F. Supp. 975, 977 (S.D.N.Y. 1992). The allegations of plaintiff's complaint establish defendants' liability under § 605.[1] Section 605(a) provides that "[n]o person not being

---

[1] It is well-settled that a claimant who establishes liability under both 47 U.S.C. §§ 553 and 605 may only recover damages under one section. *See Am. Cablevision of Queens v. McGinn,* 817 F. Supp. 317, 320 (E.D.N.Y. 1993). Plaintiff, therefore, elects to recover damages under § 605. Pl. Memo at 5.

3

authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a). Section 605(a) has been held to apply to the interception of cable communications originating as a satellite or radio transmission. *See Int'l Cablevision, Inc. v. Sykes,* 75 F.3d 123 (2d Cir. 1995), *cert denied,* 519 U.S. 929 (1996). Kingvision alleges that defendants used an illegal device to intercept and receive Kingvision's satellite signal and then broadcast the Event without authorization. Compl. ¶¶ 18, 19. Defendants' alleged conduct thus violated 47 U.S.C. § 605(a).

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup,* 973 F.2d at 158. Rather, claims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id.* An evidentiary presentation is required so that the court may ensure that there is a basis for the damages sought before entering judgment in the amount demanded. *Fustok v. Conticommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991); *Fustok,* 873 F.2d at 40. Plaintiff in this case seeks an award of statutory and enhanced damages, as well as attorney's fees and costs. Compl. ¶ 38. Defendants have not submitted any opposition to the papers submitted by plaintiff. Accordingly, a hearing is not warranted.

A claimant who has established liability under § 605(a) may recover an award of statutory damages of not less than $1,000 or more than $10,000, as the court considers just, for

4

each violation of § 605(a). *See* 47 U.S.C. § 605(e)(3)C)(i)(II). The court may consider such factors as "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *Cablevision Sys. Corp. v. De Palma,* No. 87-CV-3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting *Cablevision Sys. Dev. Co. v. Cohen,* No. 84-CV-1155, slip. op. at 4-5 (E.D.N.Y. May 20, 1988)).

Some courts have awarded flat amounts when calculating damages. *See Home Box Office v. Champs of New Haven,* 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages); *Kingvision Pay-Per-View Ltd. v. Brito,* No. 05-CV-1042, 2006 WL 728408, at *2 (S.D.N.Y. Mar. 20, 2006) (awarding $5,000 in statutory damages); *Kingvision Pay-Per-View, Ltd. v. Ruiz,* No. 04-CV-6566, 2005 WL 589403, at *2-3 (S.D.N.Y. Mar. 9, 2005) (awarding $5,000 in statutory damages). Other courts have assessed damages by multiplying the number of patrons who viewed the event by the amount an individual would pay to view the program at home on a pay-per-view channel. *See Time Warner Cable of New York City v. Taco Rapido Rest.,* 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding statutory damages of $50 per patron); *Cablevision Sys. Corp. v. 45 Midland Enter.,* 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

Plaintiff seeks the maximum statutory damage award of $10,000. Compl. ¶ 38(b); *see also* 47 U.S.C. § 605(e)(3)(C)(i)(II). The Court finds that such an award is disproportionate to the violation of the statute at issue here, especially in light of the fact that it would have cost

defendants only $12.50 times the maximum fire code capacity of the restaurant.[2] Pl. Aff., Ex. B. In the exercise of its discretion, this Court believes that an award of $2,000 in statutory damages is appropriate. This amount takes into account the pecuniary loss of plaintiff – estimated at between $150 and $350 – and the financial resources, needs, and earning ability of the defendant, as well as the burden that a greater damage award would impose on the defendant. Given the default, while there is little information in the record to assess defendants' financial circumstances, the Court is sure that these defendants do not have the financial ability to afford a higher statutory award, especially in light of the award of enhanced damages, as discussed below. This amount is also in line with other statutory damage awards from this Court and others.

Plaintiff also seeks up to $100,000, contending that defendants wilfully violated the statute for commercial advantage or private gain. *See* 47 U.S.C. 605(e)(3)(C)(ii). Wilfulness is defined as "disregard for the governing statute and an indifference for its requirements." *Trans Word Airlines, Inc. v. Thurston,* 469 U.S. 111, 126-7 (1985). Defendants intercepted and broadcast the program without authorization. Furthermore, defendants could not have done so without using an illegal device or misrepresenting the nature of their commercial establishment to a cable or satellite television provider. *See Time Warner Cable of New York City v. Googies*

---

[2] Defendants make no representation as to the maximum fire code capacity of El Piccolino Restaurante. However, the investigator's affidavit claims 15 patrons were in the restaurant at the time of the Event. Piracy Aff. at 2. The investigator opined that the maximum capacity of the restaurant is twelve. *Id.* Thus, the licensing fee to receive the Event would have been $150 plus the $200 activation fee for a total of $350. Moreover, courts that have utilized the per-patron formula to calculate damages in such cases multiply the price of the pay-per-view event by the number of people present in the establishment, not the fire code capacity.

*Luncheonette, Inc.,* 77 F. Supp. 2d 485 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Plaintiff further contends that defendants have pirated at least four other events. Plaintiff, however, has only submitted evidence of the pirating of one other event by defendants. Nonetheless, the Court agrees that defendants committed the wilful violation for commercial advantage. El Piccolino's exhibition of the Event led to an increase in patrons, who, in turn, likely purchased food and/or drinks while viewing the Event. Accordingly, I recommend that plaintiff be awarded $5,000 in enhanced damages.

Plaintiff also seeks to recover attorney's fees. An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). As directed by the Second Circuit in *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (1983), plaintiff has submitted a declaration of its attorney and contemporaneous time records. Plaintiff asserts that it incurred $942.75 in attorney's fees. Lonstein Aff. ¶ 4. In her affidavit, counsel sets forth a description of her private practice and the hourly rates which she charges: $200 per hour for work performed by an attorney and $75 per hour for work performed by a paralegal. *Id.*

The hours and rates charged by counsel are reasonable and should be awarded. *See Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp.,* 215 F.R.D. 60, 64 (E.D.N.Y. 2003) (finding rates of $400 for a partner and $180 for a third-year associate reasonable); *New Leadership Comm. v. Davidson,* 23 F. Supp.2d 301, 310 (E.D.N.Y. 1998) (finding rates of $275 for a partner and $200 for an associate reasonable). Although plaintiff seeks to recover attorney's fees in the amount of $942.75, a computation of the hours spent on this case totals

$943.75.[3] Accordingly I recommend that plaintiff be awarded attorney's fees in the amount of $943.75.

Plaintiff also seeks to recover costs in the amount of $550 which consists of the filing fee and the cost of service of process, and which this Court finds reasonable.

Conclusion

For the foregoing reasons, I respectfully recommend that default judgment be entered against defendants Manuel Palaguachi and El Piccolino Restaurante in the amount of $8,493.75, comprised of $7,000 in statutory and enhanced damages, $943.75 in attorney's fees, and $550 in costs. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Frederic Block within ten days of receiving this Report and Recommendation. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989). Plaintiff is hereby directed to serve

---

[3] Plaintiff's counsel's affidavit contains several errors regarding hourly rates. Specifically, the charge for reviewing service on July 7, 2006 was incorrectly charged as $250 and should have been charged as $25. Likewise, the charge for drafting a letter to the court was charged as $25 but should have been charged at $18.75. This Court is also troubled by the discrepancies of the two affidavits submitted by Thomas Larkin regarding the estimated capacity of El Piccolino Restaurante. Plaintiffs submitted an affidavit prepared by Thomas Larkin which states that he observed the unlawful exhibition of a boxing event by El Piccolino Restaurante on October 2, 2004. Lonstein Aff., Ex. B. Larkin's affidavit, however, states that the estimated capacity of El Piccolino Restaurante is 100. *Id.* In the instant case, the piracy affidavit states that the estimated capacity of El Piccolino Restaurante is 12. Piracy Aff. at 2. This is not the first time that this Court has noticed discrepancies in the affidavits submitted by the Lonstein law office, and by its clients' auditors. Plaintiffs and counsel are hereby put on notice that future discrepancies will be met with substantial reductions in the amounts sought for damages and/or attorney's fees.

copies of this Report and Recommendation upon defendants by December 5, 2006 at their last known addresses, and to file proofs of service with the Clerk of the Court.

**Dated: Brooklyn, New York**
       **November 28, 2006**

                              /s/
                       **Ramon E. Reyes, Jr.**
                       **United States Magistrate Judge**